*Richardson v. Maryland Department of Health*, No. 998, September Term, 2018. Opinion by Truffer, J., specially assigned.

**HEADNOTES:**

**STATE PERSONNEL AND PENSIONS—DISCIPLINARY ACTION FOR EMPLOYEE MISCONDUCT— NOTICE—TIMING**

A written Notice of Termination received by a State employee on the same day it becomes effective is timely if it is received within the 30-day time limit imposed by MD. CODE ANN., SPP § 11-106(b); Employee's claim of untimely notice of termination was negated by employee's deliberate efforts to avoid receipt of notice.

Circuit Court for Baltimore City
Case No. 23-C-17-003839

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 00998

September Term, 2018

_____

RONALD RICHARDSON

v.

MARYLAND DEPARTMENT OF HEALTH

_____

Nazarian,
Reed,
Truffer, Keith R.
    (Specially Assigned),

JJ.

_____

Opinion by Truffer, J.

_____

Filed: September 29, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellant Ronald Richardson was employed at the John L. Gilder Regional Institute for Children and Adolescents ("RICA" or the "Agency"), an agency within the Appellee, Maryland Department of Health ("MDH"). On September 2, 2016, Mr. Richardson was terminated for what was stated to be a failure to use proper hiring and classification procedures. Mr. Richardson challenged the termination of his employment pursuant to MD. CODE ANN., STATE PERS. & PENS. ("SPP") § 11-109. The Office of Administrative Hearings ("OAH") held a contested case hearing on March 31, 2017 and May 10, 2017. The Administrative Law Judge ("ALJ") affirmed Mr. Richardson's termination in a written decision dated June 22, 2017. Mr. Richardson sought judicial review of the ALJ's decision before the Circuit Court for Baltimore City. On May 9, 2018, the court issued a memorandum opinion and order affirming the ALJ's decision.

On appeal to this Court, Mr. Richardson contends that his termination was erroneous as a matter of law because the MDH did not satisfy the procedural requirements of MD. CODE ANN., SPP § 11-106 prior to taking disciplinary action.

## BACKGROUND

The relevant facts found by the ALJ are set forth below.

Mr. Richardson was employed as a Personnel Director at RICA from 2004 until he was terminated on September 2, 2016. Mr. Richardson was responsible for hiring and recruiting new employees. At all times relevant to this appeal, Kenneth Basler, the Chief Executive Officer at RICA, was Mr. Richardson's appointing authority.

In November 2014, the MDH implemented a policy in which all new hires, including contractual positions, were to be processed using JobAps, a computer software application. Mr. Richardson was trained to use JobAps for hiring and recruitment purposes. The hiring and recruitment policies implemented through the JobAps system were designed to ensure qualified candidates were hired.

On or about July 26, 2016, Mr. Richardson hired Maurice Nelson as a Direct Care Trainee, but did not use the JobAps system for the recruitment or hiring process. On the very date of his hire, Mr. Nelson was reclassified as an Office Services Clerk and then further reclassified as a Computer Specialist Trainee.[1] No documentation was provided to support the reclassifications. In August of 2016, the Department of Budget and Management ("DBM") discovered that Mr. Richardson had not followed the proper procedures in hiring Mr. Nelson and contacted the Office of Human Resources ("OHR") about the hire. Between August 8, 2016 and August 12, 2016 OHR staff made multiple requests to Mr. Richardson for documents regarding the hire of Mr. Nelson. Mr. Richardson failed to provide any of the requested documents.

Mr. Richardson's lack of response prompted OHR staff to contact Mr. Basler about their concerns with Mr. Richardson's hiring of Mr. Nelson. The concerns triggered an investigation, which Mr. Basler conducted with assistance from the OHR, into all of the

---

[1] At the time of Mr. Nelson's hire there was a statewide hiring freeze in place. Direct Care Trainees were exempt from the statewide hiring freeze, but Office Services Clerks were not exempt.

appointments that had been processed or approved by Mr. Richardson. The details of that investigation, significant to the outcome of this appeal, are as follows.

On August 22, 2016, Mr. Basler first interviewed Mr. Richardson about his hiring of Mr. Nelson. On August 30, 2016, Mr. Basler met with Mr. Richardson again for a mitigation conference. At that meeting, Mr. Basler advised Mr. Richardson that he was being disciplined for his failure to follow proper hiring procedures. Mr. Richardson made no effort to refute the allegations and maintained only that he had not been trained in JobAps. Immediately following the mitigation conference, Mr. Richardson was given written notice that he was being placed on paid administrative leave. The notice stated that, while on leave, Mr. Richardson was required to "be available at [his] home address and telephone number during normal business hours."

On September 2, 2016, while Mr. Richardson remained on paid administrative leave and was required to be available, Mr. Basler sent Mr. Richardson a text message at 8:55 a.m., requesting that he attend a 12:30 p.m. meeting that day at the RICA facility. Mr. Richardson did not respond. Mr. Basler called Mr. Richardson twice on September 2, 2016, once at 9:00 a.m. and once at 12:15 p.m. After Mr. Richardson failed to respond to Mr. Basler's phone calls or text message, and failed to appear for the meeting, Mr. Basler arranged to have the Notice of Termination personally delivered to Mr. Richardson at his home address. The notice terminated Mr. Richardson's employment without prejudice effective September 2, 2016. The process server attached the Notice of Termination to Mr.

Richardson's door at approximately 8:25 p.m. on September 2, 2016. By 8:55 p.m. that same evening the notice had been removed from the door.

## STANDARD OF REVIEW

When an appellate court reviews the final decision of an administrative agency, we look through the circuit court's decision, and review the decision of the agency, here the ALJ. *Cosby v. Dep't of Human Res.*, 425 Md. 629, 637, 42 A.3d 596, 601 (2012). Our role is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Milliman, Inc. v. Md. State Ret. and Pension Sys.*, 421 Md. 130, 151, 25 A.3d 988, 1001 (2011) (citation omitted).

In applying the substantial evidence test, we must decide, "after reviewing the evidence in a light most favorable to the administrative agency, 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' " *Colburn v. Dep't of Pub. Safety & Corr. Serv.*, 403 Md. 115, 128, 939 A.2d 716, 724 (2008) (quoting *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 68, 729 A.2d 376, 380 (1999)). We defer to the agency's (i) assessment of witness credibility, (ii) resolution of conflicting evidence, and (iii) inferences drawn from the evidence. *Schwartz v. Md. Dep't of Nat. Res.*, 385 Md. 534, 554 (2005). When determining the validity of an agency's conclusions of law, we give appropriate deference to the agency's expertise in its own field. *People's Counsel for Balt. Cnty. v. Surina*, 400 Md. 662, 682, 929 A.2d 899, 911 (2007). Thus, "an administrative agency's interpretation and application of the statute which the agency

administers should ordinarily be given considerable weight by reviewing courts." *Md. Aviation Admin. v. Noland*, 386 Md. 556, 572, 873 A.2d 1145, 1154 (2005) (quoting *Banks,* 354 Md. at 69, 729 A.2d at 381).

## DISCUSSION

Title 11, Subtitle 1 of the State Personnel and Pensions Article governs disciplinary actions concerning state employees. *See* MD. CODE ANN., SPP § 11-101 *et seq.* The statute sets forth certain procedures that the appointing authority must follow prior to taking any disciplinary action. *See* MD. CODE ANN., SPP § 11-106. Section 11-106 provides in pertinent part:

> (a) Before taking any disciplinary action related to employee misconduct, an appointing authority shall:
>
> (1) investigate the alleged misconduct;
>
> (2) meet with the employee;
>
> (3) consider any mitigating circumstances;
>
> (4) determine the appropriate disciplinary action, if any, to be imposed; and
>
> (5) give the employee a written notice of the disciplinary action to be taken and the employee's appeal rights.

(b) [A]n appointing authority may impose any disciplinary action no later than 30 days after the appointing authority acquires knowledge of the misconduct for which the disciplinary action is imposed.

Mr. Richardson presents three procedural challenges to his termination from State employment which we have summarized as follows:

1.  The notice of termination was untimely because the appointing authority did not take disciplinary action within 30 days after acquiring knowledge of Mr. Richardson's alleged misconduct, in violation of MD. CODE ANN., SPP §11-106(b);

2.  The appointing authority failed to provide Mr. Richardson with notice of the termination before such termination was effective, in violation of MD. CODE ANN., SPP §11-106(a)(5); and

3.  The appointing authority failed to provide Mr. Richardson with an explanation of the evidence against him or to consider any mitigating circumstances, in violation of MD. CODE ANN., SPP §11-106(a)(3) and Code of Maryland Regulations ("COMAR") 17.04.05.04(D)(1) and (4).

We must determine whether there was substantial evidence to support the ALJ's findings and conclusions as to each of these issues.

## I. *Timeliness of Disciplinary Action*

Mr. Richardson first argues that the September 2, 2016 Notice of Termination was untimely, in violation of MD. CODE ANN., SPP § 11-106(b). Specifically, Mr. Richardson contends that his appointing authority first had notice of the alleged misconduct on June 6, 2016, when Mr. Basler was copied on an email message from OHR staff regarding Mr. Richardson's attempt to appoint an employee without going through the recruitment process in JobAps.

MD. CODE ANN., SPP § 11-106(b) sets the general time limitation for an agency's disciplinary action. The statute prohibits the imposition of discipline more than thirty days after the appointing authority acquires knowledge of the misconduct for which the disciplinary action is imposed. MD. CODE ANN., SPP § 11-106(b); *see also W. Corr. Inst. v. Geiger,* 371 Md. 125, 144, 807 A.2d 32, 44 (2002).

The appointing authority acquires knowledge of misconduct, triggering the running of the thirty-day period, when such knowledge is "sufficient to order an investigation." *Geiger,* 371 Md. at 144, 807 A.2d at 44. Knowledge that is sufficient to order an investigation is "knowledge of an allegation that the employee had engaged in misconduct or of a situation that could have resulted in that employee's being disciplined." *Id.* at 131, 807 A.2d at 35.

Here, the ALJ found that Mr. Basler first had notice of the alleged misconduct on August 8, 2016 "when [OHR staff] began raising concerns to [Mr. Richardson] and to Mr. Basler." Consequently, the imposition of discipline had to occur by September 7, 2016. The ALJ concluded that the notice of termination delivered on September 2, 2016 was made well within thirty days of August 8, 2016.

Upon a review of the record below, we conclude that there was substantial evidence to support the ALJ's conclusion that the appointing authority first had sufficient knowledge to order an investigation on August 8, 2016, rather than June 6, 2016. At the hearing before the ALJ, Mr. Basler testified that he first received knowledge of the alleged misconduct in August of 2016 when he was contacted by OHR staff about issues with the hiring and reclassifications of Maurice Nelson.[2] Mr. Basler stated Mr. Richardson's appointment of Mr. Nelson prompted the investigation into Mr. Richardson's hiring practices, the fact of which Mr. Basler was unaware until August 8, 2016.

The ALJ credited Mr. Basler's testimony and found that there was no evidence that Mr. Basler understood the June 6, 2016 email referred to anything other than an isolated error which would not trigger an investigation into Mr. Richardson's hiring practices.

---

[2] Although Mr. Basler could not remember the exact date he was contacted by OHR staff, the ALJ admitted an email chain offered by the Agency which showed that August 8, 2016 was the earliest date that OHR staff had knowledge about Mr. Richardson's errors. As such, the ALJ determined that August 8th was the earliest date that Mr. Basler could have acquired knowledge of Mr. Richardson's misconduct.

The ALJ's conclusion that the notice of termination was timely is supported by substantial evidence and is not erroneous as a matter of law.

## II.     *Mitigating Circumstances*

Mr. Richardson next argues that the appointing authority failed to provide him with an explanation of the evidence and to consider mitigating circumstances prior to taking disciplinary action. He maintains that these failures violate MD. CODE ANN., SPP § 11-106(a)(3) and COMAR 17.04.05.04(D)(1) and (4).

The ALJ found that Mr. Basler provided sufficient notice of the allegations for which discipline was being imposed and that Mr. Basler had appropriately considered any mitigating circumstances pursuant to MD. CODE ANN., SPP § 11-106(a)(3). The ALJ concluded that Mr. Richardson's contention that the agency failed to communicate an explanation of its evidence was undermined by his failure to be available for a meeting with Mr. Basler on September 2, 2016.

We find there was substantial evidence in the record to support the ALJ's findings. On August 8, 2016, Mr. Richardson was contacted by OHR staff with concerns regarding the hiring of Mr. Nelson and questioned about the manner of that hire. During the interview on August 22, 2016, Mr. Richardson was questioned specifically about the recruitment, selection and reclassification of Mr. Nelson. The interview questions and communications from OHR staff provided Mr. Richardson with sufficient notice of the misconduct the agency was investigating—his failure to follow proper hiring procedures. During the

August 30, 2016 mitigation conference, Mr. Basler advised Mr. Richardson that he was being disciplined for his failure to use JobAps in hiring employees.

Additionally, Mr. Richardson was required to be available at his home address and by telephone during regular business hours while on paid administrative leave. On Friday, September 2, 2016, while Mr. Richardson was still on paid administrative leave, Mr. Basler attempted to reach Mr. Richardson by text message and telephone to direct him to report to the RICA facility for a meeting. Because Mr. Richardson did not respond to Mr. Basler's text message and telephone calls or attend the meeting on September 2, 2016, Mr. Richardson's own conduct prevented the Agency from providing any further explanation of its findings.

With respect to mitigation, MD. CODE ANN., SPP § 11-106(a)(3) provides that the appointing authority "shall consider *any* mitigating circumstances." (emphasis added).

Here, Mr. Richardson was given the opportunity during his interview on August 22nd and at the mitigation conference on August 30th to explain why the proper hiring and classification procedures were not followed. Mr. Basler advised Mr. Richardson that the mitigation conference was his opportunity to state why he should not be disciplined for failing to follow proper hiring procedures. Mr. Richardson offered little explanation for his failure to use JobAps and failed to provide the requested documentation. The ALJ credited Mr. Basler's testimony and determined that the Agency had considered all mitigating circumstances.

We conclude that the ALJ's factual findings and conclusions were supported by substantial evidence in the record and not erroneous as a matter of law.

## III.    *Timeliness of Notice of Termination*

Mr. Richardson's final procedural challenge to his termination is that the appointing authority failed to comply with the notice requirement in violation of MD. CODE ANN., SPP § 11-106(a)(5). Mr. Richardson relies on our decision in *Dep't of Juv. Serv. v. Miley,* 178 Md. App. 99, 940 A.2d 1137 (2008), for the proposition that for disciplinary action to be timely and consistent with applicable law, notice must be given to the employee prior to its effective date. We find his reliance misplaced.

In *Miley,* we held that the employee must *receive* notice of the disciplinary action to be taken within the thirty-day limitation imposed by MD. CODE ANN., SPP § 11-106(b). *Id.* at 106, 940 A.2d at 1141 (emphasis added). The notice of termination provided that the termination was effective at the close of the business day on March 3, 2006—which was also the 30th and final day in which the appointing authority could impose discipline. *Id.* at 112, 940 A.2d at 1144. We explained that the notice of termination mailed on the 30th day was untimely because there was no possibility for the employee to receive the notice before the expiration of the 30th day. *Id.* at 106, 940 A.2d at 1141. We clarified that, "[h]ad timely notice pursuant to SPP § 11-106(a)(5) been given to the employee before the close of business on March 3, 2006, the disciplinary action would have met the time limit imposed by SPP § 11–106(b)." *Id.* at 112, 940 A.2d at 1144.

Mr. Richardson incorrectly interprets our holding in *Miley* to require that the employee receive the notice before the date it is effective. As we noted in *Miley,* our interpretation of MD. CODE ANN., SPP § 11-106 did not address the "hypothetical situations" in which an employee might intentionally avoid communication with the employer to prevent timely delivery of the notice. *Miley*, 178 Md. App. at 106, 940 A.2d at 1141. Nothing in the statute or our decision in *Miley* precludes delivery of the notice of termination on the same day it becomes effective.

The facts in the present case are distinguishable from the facts in *Miley*. Here, the appointing authority had until September 7, 2016 to impose discipline and the Notice of Termination was delivered within that thirty-day limitation. The notice specified that termination was to be effective on September 2, 2016 but did not specify the exact hour when it was to become effective. Mr. Richardson argues that, because the notice did not specify the precise time his termination was to become effective, it was effective at the beginning of the day on September 2. Mr. Richardson takes issue with the ALJ's finding that Mr. Richardson remained an employee on September 2, 2016 through and up to the moment the Notice of Termination was delivered to his home that evening.

The ALJ found that Mr. Basler had taken substantial steps to comply with the termination procedures but that Mr. Richardson's own actions interfered with the process. The ALJ concluded that it would be unreasonable to interpret SPP §11-106 so as to permit Mr. Richardson to avoid all contact with Mr. Basler on September 2, 2016, when he was

required to be available, yet later assert that he received untimely notice of his termination. We agree.

We are also persuaded that the ALJ's decision is consistent with the purpose of the statutory scheme. As the Court of Appeals observed in *Geiger*, the legislative history of the restructured State Personnel statutes revealed that one of the purposes of the legislation was to further the goal that each State employee be treated with fairness in State employment. 371 Md. at 150, 807 A.2d at 47; *see also Danaher v. Dep't of Labor, Licensing & Reg.*, 148 Md. App. 139, 173, 811 A.2d 359, 379 (2002) (explaining the protections under MD. CODE ANN., SPP § 11-106 "ensure that the appointing authority has all relevant information before making a decision to terminate or otherwise discipline an employee*."*). In *Hughes v. Moyer*, the Court of Appeals likewise determined that the underlying purpose of the statutory notice requirement in MD. CODE ANN., SPP § 11-106(a)(5) was to ensure fair process. 452 Md. 77, 99, 156 A.3d 770, 783 (2017).

In terms of fair process, treating the delivery of the Notice of Termination as timely was not unfair to Mr. Richardson because of his avoidance of all efforts to reach him. We conclude that, in this instance, delivery of the Notice of Termination on the same day it became effective was consistent with the fair process intended by MD. CODE ANN., SPP §11-106. We reject Mr. Richardson's contention that the agency failed to comply with the statutory notice requirement set forth MD. CODE ANN., SPP § 11-106(a)(5).

- 13 -

For the foregoing reasons, we affirm the judgment of the Circuit Court for Baltimore City, affirming the action of the Office of Administrative Hearings in this matter.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**